Linda **PERNELL**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 99–CF–153.

District of Columbia Court of Appeals.

Argued Dec. 18, 2000.

Decided April 12, 2001.

Kele Onyejekwe, appointed by the court, for appellant.

L. Jackson Thomas II, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher, Roy McLeese III and Mark Gellar, Assistant United States Attorneys, were on the brief, for appellee.

Before SCHWELB, RUIZ and REID, Associate Judges.

REID, Associate Judge:

After a bench trial, appellant Linda Pernell[1] was convicted of possession of a controlled substance (cocaine), in violation of D.C.Code § 33–541(a)(1) (1998). On appeal, Ms. Pernell contends, in part, that the trial court erred by failing to impose probation without judgment under D.C.Code § 33–541(e).[2] We affirm.

## FACTUAL SUMMARY

At trial, the government's evidence showed that, on May 28, 1998, at approximately 5:20 p.m., Officer Jeffrey Colleli, a fourteen-year veteran of the Metropolitan Police Department ("MPD"), was conducting a drug surveillance operation in an elevated observation post near the 5400 block of 7th Street, N.W., in the District.

---

1. Ms. Pernell's name also appears in the record as "Purnell."

2. D.C.Code § 33–541(e) states, in pertinent part:

If any person who has not previously been convicted of violating any provision of this chapter, or any other law of the United States or any state relating to narcotic or abusive drugs or depressant or stimulant substances is found guilty of a violation of subsection (d) of this section and has not previously been discharged and had the proceedings dismissed pursuant to this subsection, the court may, without entering a judgment of guilty and with the consent of such person, defer further proceedings and place him or her on probation upon such reasonable conditions as it may require and for such period, not to exceed one year, as the court may prescribe. Upon violation of a condition of probation, the court may enter an adjudication of guilt and proceed as otherwise provided.

Officer Colleli testified that this area was selected for the operation because it was "very well known for its open-air drug markets, mainly cocaine."

As Officer Colleli was observing this area, he noticed "Ms. Pernell approach[ ] a subject later known as Mr. King ...., [and][a]fter a brief conversation[, observed] Mr. King [go] into ... an open area, like a vacant lot." Although his observation post was actually "30 [to] 40 feet" away from her, Ms. Pernell appeared to be "within about 5 feet" of Officer Colleli, due to his use of "binoculars." About "a minute" after his departure, Mr. King returned, and "dropped ... two small objects [ ] to the ground." Officer Colleli then saw "Ms. Pernell hand[ ] [Mr. King] a[n unidentified] sum of money ..., ben[d] down [,] pick[ ] up the objects[,] and ... walk[ ] south on 7th Street." Based upon this observation, Officer Colleli proceeded to broadcast a lookout to an arrest team located in the immediate area.

Officer Garvin, an eight-year veteran of the MPD who has participated in "500 to [1000] various [drug] cases," and Officer Cutler, responded to the broadcast and "stopped [Ms. Pernell] in front of 5304 7th Street, [N.W.]" Officer Garvin testified that he observed Pernell "drop[ ] two Ziplocs of white rock substance to the ground from her right hand." After Officer Cutler retrieved the discarded Ziplocs, and immediately discovered that they tested positive for cocaine, Ms. Pernell was placed under arrest for possession of cocaine.

Ms. Pernell testified as the sole defense witness. Although she admitted that she spoke with Mr. King on the day in question, she denied engaging in a drug transaction with him, and stated that she at no time was in possession of cocaine.

Following the completion of a bench trial, Ms. Pernell was found guilty of possession of cocaine. As the trial judge stated:

> [T]he court has heard the evidence in the case and finds the defendant guilty on the count of possession of cocaine beyond a reasonable doubt. The court, in viewing and weighing the testimony of the officers as opposed to Ms. Pernell, resists the defendant's testimony.... [T]he court believed the officers beyond a reasonable doubt.

Prior to sentencing, defense counsel requested that Ms. Pernell be sentenced under § 33–541(e). In denying his request, and sentencing Ms. Pernell to 180 days in prison, with all but ten days of that sentence suspended, in lieu of six months of supervised probation, the trial judge stated:

> [H]aving considered the request of Ms. Pernell to be sentenced under [§ 33–541(e) ] probation, the use of that is not appropriate in this circumstance.
>
> It's the court's view [that § 33–541(e) ] is designed for the person who makes a mistake and has a drug problem, and the defendant stands before the court and says to the court, I've made a mistake, I really want a second chance, Judge. And [§ 33–541(e) ] is designed for the purpose to help so that that person can get their lives back together.
>
> Ms. Pernell simply indicated she was wrongly convicted and that's her right to do. She does not have to personally accept the court's verdict. The court does not believe that [§ 33–541(e) ] is the appropriate avenue here.

The day following sentencing, Ms. Pernell filed a motion for reduction of sentence. After making several unsworn allegations, such as she had no babysitter for her four-year-old daughter and did "not now know the whereabouts of her daughter," Ms. Pernell stated: "The court declined to sentence [her] under Section 33–514(e) be-

cause she ... disagreed with the version of the officers." The trial court denied the motion, concluding that Ms. Pernell "ha[d] not set forth any factors that the court did not consider at the time of sentencing." Ms. Pernell filed a timely appeal.

## ANALYSIS

Ms. Pernell contends that the trial court committed plain error when it "forged a uniform rule for applying its discretion under [§ 33–541(e) ]." She maintains that the trial court abused its discretion in sentencing her because it did so based upon an impermissible "uniform policy" which effectively denies § 33–541(e) sentencing benefits to "those who do not recognize their drug problem, or their mistake, [and those] who have not asked the court for a second chance."

"[T]he decision to sentence under section 33–541(e) ... is entrusted to the trial court's discretion." *Houston v. United States,* 592 A.2d 1066, 1067 (D.C.1991). However, "[w]e will ... reverse a trial court's ruling on a matter within its discretion when the trial court, while recognizing its right to exercise discretion, 'declines to do so, preferring instead to adhere to a uniform policy....' " *Id.* (quoting *Johnson v. United States,* 398 A.2d 354, 363 (D.C. 1979)) (citations omitted). " '[T]he discretion called for ... is the exercise of discretion in individual cases, not the discretion of the trial judge to adopt a uniform policy ... in all cases irrespective of circumstances....' " *Id.* (quoting *United States v. Queen,* 140 U.S.App.D.C. 262, 263, 435 F.2d 66, 67 (1970) (footnote omitted) (other citation omitted)).

During sentencing, the trial judge asked defense counsel whether he wished to say anything in support of his request for sentencing under § 33–541(e). He responded:

Well, she clearly has never been convicted. She's never been guilty until now.

I think this [provision] is one that is enacted by the legislature to sentence people like Ms. Pernell. We call for basically a period of probation and we also ask that at the time she completes the [probation] ..., this conviction be expunged.

In response, the government asked for the full 180 day sentence. Section 33–541(d) authorizes a sentence of not more than 180 days, a fine of $1,000, or both. Ms. Pernell interjected that: "I didn't lie about what I was testifying to."

The trial court then considered the request for sentencing under § 33–541(e). First, the trial court explained her understanding of § 33–541(e) and what it was designed to accomplish. Second, the trial court concluded that Ms. Pernell failed to show why she should be sentenced under § 33–541(e). Obviously the court was bothered by the fact that Ms. Pernell "simply indicated that she was wrongly convicted." In that regard, the judge clearly concluded that Ms. Pernell was guilty, lied under oath, and showed no remorse for her actions. Indeed, Ms. Pernell's own words at sentencing revealed her understanding of the trial judge's conclusion that she had not been candid or truthful during her testimony: "I didn't lie about what I was testifying to." Nonetheless, the trial judge also was unpersuaded by the government's argument that the maximum 180 day sentence should be served by Ms. Pernell. Consequently, the judge exercised her discretion not only to deny § 33–541(e) relief, but also to suspend execution of the maximum 180 day sentence under § 33–541(d) in favor of ten days of incarceration, followed by six months of supervised probation. Similarly, the trial judge exercised her discretion in denying the motion for reduction of sentence. Nothing in Ms. Pernell's motion reflected remorse, or any basis for the trial court reversing its determination that Ms. Pernell had lied under oath.

Contrary to Ms. Pernell's assertions, the trial court's statement prior to sentencing does not amount to the type of "uniform policy" that this court deemed to be an abuse of discretion in *Houston, supra.* In *Houston, supra,* the trial judge stated: "I don't give 541(e) when people are involved in selling and buying hard drugs, heroin and cocaine." *Id.* at 1067. This statement reflected "the discretion of the trial court to adopt a uniform policy" rather than "the exercise of discretion in [an] individual case[ ]." *Id.* Unlike the judge in *Houston,* the trial judge in Ms. Pernell's case exercised her discretion in Ms. Pernell's individual case. Ms. Pernell had no statutory entitlement to be sentenced under § 33–541(e). The plain language of the statute specifies that the trial judge "may" defer sentence and place the individual on conditional probation. As the legislative history of this section reveals: "The court's decision whether or not to apply the provisions of this section to an eligible offender is discretionary. . . ." Council of the District of Columbia, Committee on the Judiciary, Report on Bill 4–123, "the District of Columbia Uniform Controlled Substances Act of 1981," April 8, 1981, at 30.

 Ms. Pernell's case does not fall within the very limited exceptions to the principle established by our precedents, that "it is not our role to review sentences which are within statutory limits." *Walden, supra,* 366 A.2d at 1077; *see also In*

*re L.J.,* 546 A.2d 429, 434 (D.C.1988). For example, "we are authorized to reexamine the sentencing process where it is alleged that the judge *totally* failed to exercise [her] discretion in imposing sentence." *United States v. Stoddard,* 180 U.S.App. D.C. 209, 213, 553 F.2d 1385, 1389 (1977) (emphasis added); *L.J., supra,* 546 A.2d at 435 (quoting *Stoddard, supra*). As we have shown, there was no *total* failure to exercise discretion in this case. Indeed, the pivotal reason why the trial court decided not to sentence Ms. Pernell under § 33–541(e) was her lack of candor. In that regard, we have held, as has the Supreme Court of the United States, that in imposing a sentence within statutory limits, the judge may properly take into account the fact that a defendant gave false testimony during her trial. *Banks v. United States,* 516 A.2d 524, 530 (D.C. 1986) (citing *United States v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978)). That is what the trial judge did in sentencing Ms. Pernell. Furthermore, the trial judge undoubtedly concluded that Ms. Pernell's statement in her motion for reduction of sentence, that she was denied § 541(e) relief because she "disagreed with the version of the officers," merely confirmed her lack of candor. In short, we see no abuse of discretion.

 Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.[3]

*So ordered.*

---

**3.** Ms. Pernell's other arguments are unpersuasive. She asserts that since the government "failed to prove that [she] possessed a measurable amount of cocaine," her conviction must be reversed due to an insufficiency of evidence in this regard. "This court will reverse a conviction on the basis of insufficient evidence 'only if, after viewing the evidence in the light most favorable to the government, it can be said that the decision is clearly erroneous.' " *Foster v. United States,* 699 A.2d 1113, 1115 (D.C.1997) (quoting *Coo-*

*per v. United States,* 680 A.2d 1370, 1371 (D.C.1996)). " 'Only if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, can we reverse for insufficiency of the evidence.' " *Id.* (internal quotation omitted) (quoting *Cooper, supra,* 680 A.2d at 1371) (citation omitted).

Contrary to Ms. Pernell's claims, the record reveals that the government proved that she possessed a measurable amount of cocaine. The DEA 7 form, that was admitted into evi-

RUIZ, Associate Judge, dissenting in part:

I agree with the majority except on the issue of the application of D.C.Code § 33–541(e). On that issue, I believe the case should be reversed and remanded because

dence, without objection from defense counsel, specifically stated that the amount of cocaine recovered and tested was "0.23g." Since "[t]he government ordinarily establishes the presence of a measurable amount of a controlled substance by means of a chemist's report stating the weight of the drug in question," *Price v. United States,* 746 A.2d 896, 899 (D.C.2000) (citation omitted), and the DEA 7 is commonly regarded as such a report, *see id.* at 900, the government presented sufficient evidence that Ms. Pernell possessed a measurable amount of cocaine to sustain her conviction. In her reply brief, Ms. Pernell contends, for the first time, that "each of the separate bags did not contain measurable quantities of cocaine." However, since "[i]t is the longstanding policy of this court not to consider arguments raised for the first time in a reply brief," *Stockard v. Moss,* 706 A.2d 561, 566 (D.C.1997), we need not address this particular claim.

Second, Ms. Pernell asserts that (1) the trial judge erred by telling the prosecutor that: "the standard is a measurable amount ...," thus "prepar[ing] the government at trial;" and that (2) the prosecutor made an improper comment by affirming that he was ready for trial. Since Ms. Pernell raises these assertions for the first time on appeal, we review them for plain error. *See Brawner v. United States,* 745 A.2d 354, 357 (D.C.2000); *Mathis v. United States,* 513 A.2d 1344, 1348 (D.C. 1986). " 'Under the plain error standard, the error must be (1) obvious or readily apparent, and clear under current law; and (2) so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial.' " *Id.* (quoting *Coates v. United States,* 705 A.2d 1100, 1104 (D.C.1998)) (other quotations and internal quotation marks omitted). This court will reverse under the plain error standard " 'only in exceptional circumstances where a miscarriage of justice would otherwise result.' " *Id.* (quoting *Peterson v. United States,* 657 A.2d 756, 762 (D.C.1995)) (other quotations and internal quotation marks omitted).

the trial court abused its discretion by adopting and implementing in appellant's case a "uniform rule" that impermissibly limited its consideration of appellant for probation under § 33–541(e).

In essence, section 33–541(e)[1] provides

Even assuming, without deciding, that the trial court and the prosecutor committed the errors alleged by Ms. Pernell, she is nevertheless not entitled to a reversal because she has failed to show that she suffered "substantial prejudice" as a result of such alleged errors. *See Bowman v. United States,* 652 A.2d 64, 71–72 (D.C.1994). In fact, nowhere in her briefs before this court does Ms. Pernell articulate the precise prejudice that she suffered due to the challenged comments. *See Coates, supra,* 705 A.2d at 1104.

Furthermore, "given the strength of the government's case and the weakness of the defense ..., any possible harm flowing from th[e challenged comments] was 'too trivial to worry about.' " *Washington v. United States,* 760 A.2d 187, 196 (D.C.2000) (quoting *Scott v. United States,* 619 A.2d 917, 929 (D.C. 1993)). During a drug surveillance operation in an area known for drug distribution, Officer Collelli observed what he believed to be a drug transaction between Ms. Pernell and Mr. King. After Ms. Pernell was approached by Officers Garvin and Cutler following the broadcast lookout, Officer Garvin witnessed Ms. Pernell drop two ziplock bags to the ground. Upon conducting an on-the-scene field test of the contents of the bags, Officer Garvin learned that the bags contained cocaine. Ms. Pernell's sole defense at trial was that she did not purchase or possess cocaine on the day in question.

Thus, "neither of these comments requires reversal because [Ms. Pernell] has not shown ... 'substantial prejudice,' " *Bowman, supra,* 652 A.2d at 71–72, and "[t]he evidence of [her] guilt was strong...." *Morrison v. United States,* 547 A.2d 996, 1000 (D.C.1988).

1. D.C.Code § 33–541(e) (1998 Repl.) provides:

(1) If any person who has not previously been convicted of violating any provision of this chapter, or any other law of the United States or any state relating to narcotic or abusive drugs or depressant or stimulant substances is found guilty of a violation of

that a judge "may, without entering a judgment of guilty and with the consent of such person," place the person on probation for no more than a year on such reasonable conditions as the court may provide. Violation of the terms of probation may, in the discretion of the judge, subject the person to conviction and sentencing for drug possession. If the person is placed on probation and observes the conditions imposed by the judge, however, the person is entitled to discharge and dismissal of the proceedings without adjudication of guilt. Once discharged, the person is not deemed to have a conviction and thus is not subject to "disqualifications or disabilities imposed by law upon conviction of a crime ... or for any other pur-pose." D.C.Code § 33–541(e)(1). Upon discharge and dismissal, the person may obtain expungement of "all official records,"[2] including arrest, indictment or information, trial, finding of guilt, dismissal and discharge. See D.C.Code § 33–541(e)(2). The purpose, in short, is to "restore such person, in the contemplation of this law, to the status he or she occupied before such arrest or indictment or information." Id. For example, a discharged person whose records have been expunged does not commit perjury and is not considered to give a false statement "by reason of failure to recite or acknowledge such arrest, or indictment, or trial in response to any inquiry made of him or her for any purpose." Id.

subsection (d) of this section and has not previously been discharged and had the proceedings dismissed pursuant to this subsection, the court may, without entering a judgment of guilty and with the consent of such person, defer further proceedings and place him or her on probation upon such reasonable conditions as it may require and for such period, not to exceed one year, as the court may prescribe. Upon violation of a condition of the probation, the court may enter an adjudication of guilt and proceed as otherwise provided. The court may, in its discretion, dismiss the proceedings against such person and discharge him or her from probation before the expiration of the maximum period prescribed for such person's probation. If during the period of probation such person does not violate any of the conditions of the probation, then upon expiration of such period the court shall discharge such person and dismiss the proceedings against him or her. Discharge and dismissal under this subsection shall be without court adjudication of guilt, but a nonpublic record thereof shall be retained solely for the purpose of use by the courts in determining whether or not, in subsequent proceedings, such person qualifies under this subsection. Such discharge or dismissal shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime (including the penalties prescribed under § 33–548 for second or subsequent convictions) or for any other purpose.

(2) Upon the dismissal of such person and discharge of the proceedings against him under paragraph (1) of this subsection, such person may apply to the court for an order to expunge from all official records (other than the nonpublic records to be retained under paragraph (1) of this subsection) all recordation relating to his or her arrest, indictment or information, trial, finding of guilty, and dismissal and discharge pursuant to this subsection. If the court determines, after hearing, that such person was dismissed and the proceedings against him or her discharged, it shall enter such order. The effect of such order shall be to restore such person, in the contemplation of this law, to the status he or she occupied before such arrest or indictment or information. No person as to whom such order has been entered shall be held thereafter under any provision of any law to be guilty of perjury or otherwise giving a false statement by reason of failure to recite or acknowledge such arrest, or indictment, or trial in response to any inquiry made of him or her for any purpose.

2. Disposition under 33–541(e) is limited to one time. See D.C.Code § 33–541(e)(1). Therefore, a non-public record is kept solely for the purpose of determining whether a person has already benefitted from disposition under this provision. See id.

The foregoing recitation of the provisions of § 33–541(e) makes clear that its application bestows important benefits that go beyond the outcome of the immediate criminal proceeding and can have an impact on a person's subsequent activities in school, employment, etc. The question presented by this appeal is a new one, concerning the scope of the trial court's discretion in determining who is eligible for consideration for such beneficial treatment.

It is easy to reject appellant's contention that a trial court must apply § 33–541(e) so long as a person meets the minimum requirements set out in the statute: the person is a first-time drug offender, is found guilty of drug possession and consents to disposition under subsection (e). The statute expressly states that the court "may" defer proceedings and place the person on probation. *See* D.C.Code § 33–541(e)(1). Elsewhere in the same subsection (e), the statute provides that the court "shall" discharge the person if the conditions of probation are met, and "shall" issue an order expunging the records if the person was discharged and the proceedings dismissed. *See id.* Therefore, the trial court's discretion whether to impose probation in the first instance is plain. *See Houston v. United States,* 592 A.2d 1066, 1067 (D.C.1991).

The more substantive claim on appeal is that the trial court abused its discretion by impermissibly adopting an across-the-board or uniform rule as to when it would consider disposition under § 33–541(e). Specifically, appellant contends that the trial court incorrectly limited the universe of those it would consider eligible for § 33–541(e) when it stated that:

> It's the court's view that [§ 33–541(e) ] is designed for the person who makes a mistake and has a drug problem, and the defendant stands before the court and says to the court, I've made a mistake, I really want a second chance, Judge. And [§ 33–541(e) ] is designed for the purpose to help so that person can get their lives back together.

> Ms. Pernell simply indicated that she was wrongly convicted and that's her right to do so. She does not have to personally accept the court's verdict. The court does not believe that [§ 33–541(e) ] is the appropriate avenue here.

Appellant did not so present herself to the judge when she requested probation under § 33–541(e). Rather than admitting that she had made a "mistake," appellant maintained her innocence, stating that she had not possessed drugs and that she had been wrongly found guilty. Instead, she argued that she had never been arrested or convicted of a drug offense or any other offense, that she had a young child who primarily depended on her for care, a job that was imperiled by the jail sentence and that she was attending daily job training classes to improve her employment situation.[3] As a result, she contended, the

---

**3.** Specifically, appellant argued to the trial court in her motion for reconsideration of sentence that:

> The defendant is a 40 year old resident of the District of Columbia who has lived in one address all her life. She has never been arrested or detained by the police until the events of May 28, 1998.

> The defendant is the mother of a four year old daughter, [D.P.].

> The defendant has no babysitter. She is [sic] primarily takes care of her daughter's daily needs.

> The defendant is at risk of being separated by her employer as a result of the ten days she must spend in jail if this harsh sentence is not reduced.

> The defendant is also a student of the Temporary Assistance for Needy Families's Job Club, where [she] attends classes daily so that she would get into more challenging positions in her workplace.

> The incarceration of Ms. Purnell has already thrown her home into chaos as she does not know the whereabouts of her daughter.

judge should place her on probation under § 33–541(e), instead of sentencing her, so as to safeguard her ability to care for her child and perform her job responsibilities. I disagree with the majority, and do not find support in the transcript for the majority's premise, that the trial court denied appellant's request for probation under § 33–541(e) because she "gave false testimony during her trial." See majority opinion, *ante*, at 996. In denying appellant's request for probation under § 33–541(e), the trial court did not refer to or weigh the individual grounds appellant put forward, nor did she reason that appellant committed perjury or lacked "candor." See majority opinion, *ante*, at 996.[4] As quoted earlier, the trial court indicated only that appellant did not come within the category of persons who admitted making a "mistake" for whom § 33–541(e) is "designed." [5]

In *Houston* we held that it was an abuse of discretion for a trial court to adopt a "uniform policy" that § 33–541(e) did not apply to "people involved in selling and buying hard drugs, heroin and cocaine."

> The court declined to sentence the Defendant under Section 33–5[41](e) because she, the defendant, disagreed with the version of the officers.

4. Even if the trial court had denied probation based on appellant giving "false testimony," or lying to the court, I do not believe that the trial court may disregard the individual factors presented in favor of probation if those factors were not precluded by the legislature.

5. In denying the appellant's motion for reduction of sentence, the trial court stated that "[t]he defendant has not set forth any factors that the court did not consider at the time of sentencing. Therefore, for the reasons stated in open court at the time of sentencing the motion [is] denied." [R. at 14] The trial court's acknowledgment at the time of sentencing that appellant did not have to agree with the court's verdict, coupled with its view that such agreement was required, in the form of admitting a mistake, to benefit from

592 A.2d at 1067–68.[6] When a trial court is called upon to make a discretionary ruling, as here, "it is improper for the court to refuse to decide the question as a matter of discretion, but instead purport to be bound by a hard and fast rule." *Id.* (citing *Johnson v. United States*, 398 A.2d 354, 364 (D.C.1979)).

In this case there can be no doubt that the trial court had a policy not to apply § 33–541(e) except to persons who, once found guilty, admitted to having a drug problem and making a mistake. That is no different, in the sense that it is a "uniform rule," than the policy we rejected in *Houston* that § 33–541(e) is not available to persons found guilty of possessing hard drugs. It is particularly telling that the trial court rejected appellant's request only by reference to its view of the applicability of § 33–541(e) to such a subcategory of persons found guilty of drug possession and did not mention at all the particular circumstances put forth by appellant as reasons why the trial court should exercise discretion in her favor. This was not "the discretion called for ... [which ] is the

§ 33–541(e), renders the basis for the trial court's decision crystal clear. The trial court did not, in fact, consider the individual circumstances put forth by appellant because the court considered them irrelevant under § 33–541(e).

6. The majority cites to *Walden v. U.S.*, 366 A.2d 1075 (D.C.1976), for the proposition that "it is not our role to review sentences which are within statutory limits." *Id.* at 1077. If the trial court here had imposed sentence in the usual course, I would agree with the majority that virtually the only question on appeal is whether the sentence is within the parameters provided by law, although even there, uniform policies are not permissible. *See generally Johnson v. U.S.*, 398 A.2d 354 (D.C.1979). However, where, as here, the judge is asked to sentence under a particular statute that has fully developed consequences that evidence an important legislative purpose, the judge must exercise discretion in accordance with the statute.

exercise of discretion in individual cases, not the discretion of the trial judge to adopt a uniform policy ... in all cases irrespective of circumstances." *Houston,* 592 A.2d at 1067 (text omitted in original) (quoting *United States v. Queen,* 140 U.S.App.D.C. 262, 263, 435 F.2d 66, 67 (1970)).

A significant difference between this case and *Houston* is that here, the trial court expressed its "uniform policy" in terms of what it thought § 33–541(e) was designed to accomplish. The question becomes then, not whether the trial court had and implemented a uniform policy— the record makes clear that it had and did so in this case—but whether that policy was an abuse of discretion because it was arbitrary or permissible because it accurately reflects the purpose of § 33–541(e). This is an issue we have not explored before.

As always, we start with the statutory language. *See Rider v. U.S.,* 687 A.2d 1348, 1352 (D.C.1996). Nothing in the language of § 33–541(e) limits the category of persons who may be considered under its provisions except for three qualifications: that the person not have been convicted of a drug offense, that the person be found guilty of possession in the case under consideration and that the person consent to disposition under § 33–541(e). The statute otherwise deals exclusively with the consequences of proceeding with probation and, if appropriate, discharge, dismissal and expungement of records. The only indication in the statute of the scope of discretion afforded the judge is the permissive "may" which we said in *Houston* requires the trial court to consider the circumstances in individual cases and prohibits the application of a uniform rule.[7] This would appear to give the trial court the broadest possible discretion to consider probation in *every* case of first time drug possession, depending on individual circumstances. Further, the broad remedial consequences that § 33–541(e) mandates where the person satisfies the conditions of probation, also suggest that the trial court should take into account individual life circumstances that might be impacted if a first-time drug possessor is not given the opportunity to secure those favorable consequences.[8] Based on the broad statutory grant of discretion, I have no question that, as the trial court noted, a person who admits she has a drug problem and made a mistake may well be a good candidate for probation under § 33–541(e). I disagree, however, that the statute limits consideration to only such persons. Therefore, I would reverse and remand the case on the

---

7. To the extent that the legislative history provides insight as to the purpose of § 33–541(e), the D.C. Council Committee Report states (under the section entitled "Structuring of Penalties Based on the Seriousness of the Conduct Involved") that the legislation focuses on the "goal of structuring penalties according to the *nature of the offense." See* COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT ON BILL 4–123, the District of Columbia Uniform Controlled Substances Act of 1981, (April 8, 1981) at 6 (emphasis added). The Report indicates that the penalty adjustments provided for in § 33–541(e) are for "first offenders who have violated the provision prohibiting simple possession of controlled substances," (such as Pernell) rather than offenders who have committed more serious crimes such as distribution of a controlled substances to minors, or second or repeat offenders. *See id.* The Report does not distinguish among persons found guilty of simple possession for the first time.

8. The D.C. Council Committee Report states, "[t]his [penalty] structure includes innovations which would provide the means for giving certain first offenders the opportunity to make a new start without the handicap of a criminal record," and "offers first offenders, at the court's option, the chance to 'wipe the slate clean' .... for example in response to a job application question...." *Id.* at 6–7, 31.

issue of the imposition of probation under § 33–541(e) so that the trial court may consider the particular circumstances which appellant argued should weigh in her favor.